UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

SECURITIES AND EXCHANGE COMMISSION,      :

                    Plaintiff,      :

         -against-      :

PLATINUM MANAGEMENT (NY) LLC;      :
PLATINUM CREDIT MANAGEMENT, L.P.;      :
MARK NORDLICHT;      :
DAVID LEVY;      :
DANIEL SMALL;      :
URI LANDESMAN;      :
JOSEPH MANN;      :
JOSEPH SANFILIPPO; and      :
JEFFREY SCHULSE,      :

                   Defendants.      :

------------------------------------------------------------ x

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2018 NOV -5  PM 3: 51

OFFICE OF THE CLERK

**SECOND AMENDED ORDER**
**APPOINTING RECEIVER**
Docket No. 16-CV-6848 (DLI) (VMS)

8:18MC 249

**WHEREAS** this matter has come before this Court upon motion of the Plaintiff U.S. Securities and Exchange Commission ("SEC", "Commission" or "Plaintiff") to appoint a substitute receiver in the above-captioned action;

**WHEREAS** the Court finds that, based on the record in these proceedings, the appointment of a substitute receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of Platinum Credit Management, L.P.; Platinum Partners Credit Opportunities Master Fund LP; Platinum Partners Credit Opportunities Fund (TE) LLC; Platinum Partners Credit Opportunities Fund LLC; Platinum Partners Credit Opportunity Fund (BL) LLC; Platinum Liquid Opportunity Management (NY) LLC; and Platinum Partners Liquid Opportunity Fund (USA) L.P. ("Receivership Entities"); to (i) preserve the status quo, (ii) ascertain the extent of commingling of funds among the Receivership Entities; (iii) ascertain the true financial condition of the Receivership Entities and the disposition of investor funds; (iv)

prevent further dissipation of the property and assets of the Receivership Entities; (v) prevent the encumbrance or disposal of property or assets of the Receivership Entities; (vi) preserve the books, records and documents of the Receivership Entities; (vii) be available to respond to investor inquiries; (viii) protect investors' assets; (ix) conduct an orderly wind down including a responsible liquidation of assets and orderly and fair distribution of those assets to investors; and (x) determine whether one or more of the Receivership Entities should undertake bankruptcy filings.

**WHEREAS** the Court has subject matter jurisdiction over this action and personal jurisdiction over the Receivership Entities, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. This Court continues to take exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the Receivership Entities (the "Receivership Assets").

2. By Order dated July 6, 2017, this Court appointed Melanie L. Cyganowski Receiver. Until further Order of this Court, Melanie Cyganowski will serve without bond as substitute receiver (the "Receiver") for the receivership estate of the Receivership Entities (the "Receivership Estate").

**I. General Powers and *Duties* of Receiver**

3. The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers, managing members, and general and limited partners of the Receivership Entities under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Fed.R.Civ.P. 66.

2

4.  All officers, directors, managing members, general and limited partners of the Receivership Entities are and remain dismissed from any and all positions of management of the Receivership Entities, and the powers of any officers, directors, managing members, general and limited partners of the Receivership Entities, are and remain subject to the authority and discretion of the Receiver.   The Receiver shall assume and control the operation of the Receivership Entities and shall pursue and preserve all of the Receivership Entities' claims.

5.  No person holding or claiming any position of any sort with any of the Receivership Entities shall possess any authority to act by or on behalf of any of the Receivership Entities except as may be authorized or delegated by the Receiver.

6.  Subject to the specific provisions in this Order, the Receiver has and shall have the following general powers and duties:

A.     To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property");

B.     To take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership Entities; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;

3

C.     To manage, control, operate and maintain the Receivership Entities and hold in the Receiver's possession, custody and control all Receivership Property, pending further Order of this Court;

D.     To use Receivership Property for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging the Receiver's duties as Receiver;

E.     To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, managers, managing members, and general and limited partners, and agents of the Receivership Entities;

F.     To engage and employ persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers, subject to Court approval;

G.     To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H.     To issue subpoenas for documents and testimony consistent with the Federal   Rules of Civil Procedure and Court orders;

I.     To investigate transactions by and among Receivership Entities, defendants, and any other persons and entities.

J.    To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging the Receiver's duties as Receiver;

K.    To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate; and,

L.    To take such other action as may be approved by this Court.

7.   The Receiver may, in the Receiver's discretion, consult with any party in interest, including the SEC staff, the individual defendants, creditors, and investors regarding any Receivership matter.

## II. Access to Information

8.    The Receivership Entities and the Receivership Entities' past and/or present officers, directors, managers, managing members, general and limited partners, agents, attorneys, accountants and employees, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

9.    The Receivership Entities and the Receivership Entities' past and/or present officers, directors, agents, managers, managing members, general and limited partners, attorneys, employees, and accountants, shall cooperate with the Receiver and produce all documents as may be required by the Receiver regarding the business of the Receivership Entities, or any other

5

matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Entities.

## III. Access to Books, Records and Accounts

10. The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to the Receivership Entities. All persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

11. The Receivership Entities, as well as their past and/or present officers, directors, agents, managers, managing members, general and limited partners, attorneys, employees, and accountants, any persons acting for or on behalf of the Receivership Entities, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts or assets of the Receivership Entities are hereby directed to deliver the same to the Receiver, the Receiver's agents and/or employees.

12. All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, of the Receivership Entities that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

A. Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Entities except upon instructions from the Receiver;

6

B.      Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court; and

C.      Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

**IV. <u>Access to Real and Personal Property</u>**

13.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Entities, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

14.     The Receiver is authorized to take immediate possession of all real property of the Receivership Entities, wherever located, including but not limited to all ownership and leasehold interests and fixtures.  Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

15.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above.  The Receiver shall have exclusive control of the keys and all other means of access to the real property.  The

7

Receivership Entities, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys or other means of access made, nor shall they have keys or other means of access in their possession during the term of the receivership except as authorized by the Receiver.

16.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

**V. Notice to Third Parties**

17.     The Receiver shall promptly give notice of the Receiver's appointment to all known persons and entities including past and present officers, directors, managers, managing members, general and limited partners, agents, attorneys, accountants, and employees of the Receivership Entities, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.  Such notice may be provided by electronic means.

18.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest in any Receivership Entities shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Entities had received such payment.

19.     In furtherance of the Receiver's responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that she deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate.   All government offices which maintain public files of

security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

20.      The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Entities (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Entities.      The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail.  The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver.  All personal mail of any individuals, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver.  The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Entities. The Receivership Entities shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

21.      Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage, trash removal, and any other services to the Receivership Entities shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## VI. Injunction Against Interference with Receiver

22.     The Receivership Entities and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, that would:

A.      Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B.      Hinder, obstruct or otherwise interfere with the Receiver in the performance of the Receiver's duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

C.      Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Entities, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Entity or which otherwise affects any Receivership Property; or,

10

D.      Interfere with or harass the Receiver, or interfere in any manner with the
exclusive jurisdiction of this Court over the Receivership Estate.

23.      The Receiver shall promptly notify the Court and SEC counsel of any failure or
apparent failure of any person or entity to comply in any way with the terms of this Order.

## VII. Stay of Litigation

24.      As set forth in detail below, the following proceedings, ***excluding*** (i) the instant
proceeding, (ii) all police or regulatory actions and actions of the Commission related to the
above-captioned enforcement action, and for the avoidance of doubt, (iii) Cause No: FSD
118/2016 (NAS) and Cause No: FSD 131 of 2016 (AJJ) pending before the Grand Court of the
Cayman Islands, and (iv) the bankruptcy cases *In re Platinum Partners Value Arbitrage Fund
L.P.*, 16-12925 (Bankr. S.D.N.Y.) and *In re Platinum Partners Value Arbitrage Fund
International Ltd.*, 16-12934 (Bankr. S.D.N.Y.), are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy
proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other
actions of any nature involving: (a) the Receiver, in the Receiver's capacity as Receiver;
(b) any Receivership Property, wherever located; (c) any of the Receivership Entities; or,
(d) any of the Receivership Entities' past or present officers, directors, managers,
managing members, agents, or general or limited partners sued for, or in connection with,
any action taken by them while acting in such capacity of any nature, whether as plaintiff,
defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are
hereinafter referred to as "Ancillary Proceedings").

25.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

26.     All Ancillary Proceedings are stayed in their entirety, and all courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.    Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Entities against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## VIII. Managing Assets

27.     The Receiver shall at all times administer Receivership Property with the care and diligence that an ordinary prudent individual would use in handling such person's own estate.[1]

28.     The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of Receivership Property in the ordinary course of business of the Receivership Entities' orderly wind down, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate.

29.     As soon as is practicable, the Receiver shall file with the Court a budget for the subsequent six-month period of the Receivership's liquidation, and shall continue to prepare and file with the Court budgets for such periods that are appropriate under the facts and circumstances of the case until the close of the case.

30.     The Receiver may engage in transactions outside of the ordinary course of business of the Receivership Entities' orderly wind down only upon motion and approval of the

---

[1] *See, e.g., SEC v. Kirkland*, 2012 U.S. Dist. LEXIS 126739 at *6 (S.D. Fla., Aug. 1, 2012); *Fleet Nat'l Bank v. H & D Entertainment*, 926 F. Supp. 226, 240 n.51 (D. Mass. 1996), aff'd, 96 F.3d 532 (1st Cir. 1996).

12

Court.  For purposes of this paragraph, a transaction outside of the ordinary course of business is any transaction that involves (i) the expenditure of Receivership cash in excess of $3 million, or the disposition of the Receivership Estate's interest in Receivership Property in exchange for cash or property of value in excess of $3 million, and/or (ii) any "carrying on" of a business within the meaning of 28 U.S.C. §959.  Notwithstanding anything to the contrary in this Order, the Receiver's release of a security interest or other assignment or termination of rights in connection with the payoff of a loan, or the settlement of a transaction (e.g., pay out on a life insurance policy or realization of a litigation outcome purchase), at par shall be deemed within the ordinary course of business of the Receivership Entities' orderly wind down.

31.    At all times the Receiver shall use the Receiver's best efforts to maximize the value realized upon the disposition of Receivership Property, considering the costs and benefits of any proposed transaction for the disposition of Receivership Property and taking into account the risk profile, and the expected time horizon for the disposition, of such Receivership Property.

32.    Subject to provisions of paragraph 30 of this Order, the Receiver is authorized, without leave of Court, to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estate, including making payments to contractual counter-parties, creditors, employees, and agents of the Receivership Estate and communicating with vendors, investors, governmental and regulatory authorities and others, as appropriate and necessary for the orderly wind down of the Receivership Property consistent with 28 U.S.C. §959.

13

33.     The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations.

**IX.  Investigate and Prosecute Claims**

34.     Subject to the requirement, in Section VII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in the Receiver's discretion, be advisable or proper to recover and/or conserve Receivership Property.

35.     Subject to the Receiver's obligation to expend Receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate, the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits and fees, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order.

36.     The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all Receivership Entities.

14

## X. **Bankruptcy Filing**

37.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for any or all of the Receivership Entities. If a Receivership Entity is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Entities as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 3 above, the Receiver is vested with management authority for all Receivership Entities and may therefore file and manage a Chapter 11 petition. *See, In re Bayou Group, LLC,* 564 F.3d 541, 548-49 (2nd Cir. 2009).

38.     The provisions of Section VII above bar any person or entity, other than the Receiver, from placing any of the Receivership Entities in bankruptcy proceedings.

## XI. **Liability of Receiver**

39.     The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, the Receiver's Retained Personnel (as that term is defined below), and the Receivership Estate.

40.     Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with the Receiver's fiduciary obligations in this matter.

41.     The Receiver and the Receiver's agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to

15

anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel.

42.     The Receiver and the Receiver's advisers and agents shall be indemnified by each of the Receivership Entities except for gross negligence, willful misconduct, fraud, or breach of fiduciary duty determined by a final order no longer subject to appeal, for all judgments, costs, reasonable expenses including legal fees (which shall be paid under the indemnity after court approval as they arise), arising from or related to any and all claims of whatsoever type brought against any of them in their capacities as Receiver or advisers or agents of the Receiver; provided, however, that nothing herein shall limit the immunity of the Receiver and the Receiver's advisers and agents allowed by law or deprive the Receiver or the Receiver's advisers and agents of indemnity for any act or omission for which they have immunity.

43.     This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

44.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

## XII. Recommendations and Reports

45.     The Receiver is authorized, empowered and directed to develop a plan, on the Receiver's behalf or in conjunction with any other party, for the fair, reasonable, and efficient recovery and disposition of all remaining, recovered, and recoverable Receivership Property (the "Disposition Plan"), which may be a plan of liquidation.

16

46.     As soon as is practicable, the Receiver shall provide the Court with the Receiver's recommendations regarding all pending motions in this case.

47.     Within forty-five (45) days after the entry of this Order, the Receiver shall file and serve a full report and accounting of each Receivership Entity (the "First Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate.

48.     The Quarterly Status Report shall contain the following:

A.      A summary of the operations of the Receiver;

B.      The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.      A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.      A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.      A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

17

F.      A summary of the status of the Receiver's investigation of the transactions by and among the Receivership Entities;

G.      A list of all known investors and creditors and the amount of their investments and claims, as applicable, redacted to exclude personally identifiable information;

H.      The status of investor and creditor claims proceedings, after such proceedings have been commenced; and,

I.      The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

J.      Any other information that the Receiver reasonably deems appropriate to include in the First Status Report.

49.     Subsequent to the filing of the First Status Report, the Receiver shall file a quarterly status report (the "Quarterly Status Report") containing the same categories of information set forth in the First Status Report.  The Quarterly Status Report shall be filed within twenty (20) days of the end of each quarter, except that, the first Quarterly Status Report shall be filed upon the passing of the first full quarter after the First Status Report is filed.

50.     On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

## XIII. Fees, Expenses and Accountings

51.     Subject to the specific provisions of this Order, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of business of the wind down of the Receivership Estate.

52.     Subject to the specific provisions of this Order, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist the Receiver in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement. For the avoidance of doubt, the term "Retained Personnel" shall include any professionals retained to provide services to the Receivership Estate as a whole, and any counsel retained for any purpose. The term "Retained Personnel" shall not include persons retained by the Receiver for the purpose of assisting the Receiver in evaluating a specific Receivership Property whose fee is under $75,000.

53.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estate as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

54.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estate (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

55.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. Such cost benefit review may include an evaluation of the results achieved in relation to the costs associated with any particular

Receivership Asset. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

56. Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court in the SEC staff's discretion or such other percentage holdback as the Court may order on its own motion or on the request of the SEC. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

57.   Each Quarterly Fee Application shall:

A.   Comply with the terms of the Billing Instructions agreed to by the Receiver; and

B.   Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

58.   At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

Dated: Brooklyn, New York
       October 16, 2017

                                        /s/
                                _____
                                DORA L. IRIZARRY
                                United States District Judge